IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARQUIS PROCAP SYSTEM, LLC, | |
| Plaintiffs, | 8:20CV395 |
| vs. | ORDER |
| NOVOZYMES NORTH AMERICA, INC., | |
| Defendant. | |

This matter is before the Court on a discovery dispute arising out of a lawsuit filed by Marquis ProCap System, LLC ("Marquis") against Novozymes North America, Inc., ("Novozymes") and Green Plains Inc. ("Green Plains") in the United States District Court for the Central District of Illinois. After the parties conducted limited jurisdictional discovery, the Illinois court dismissed Green Plains as a defendant for lack of personal jurisdiction. Subsequently, Marquis served the disputed third-party document and deposition subpoenas under Rule 45 of the Federal Rules of Civil Procedure on Green Plains and two of its officers located in Nebraska. Green Plains objects to the subpoenas because they are unduly burdensome, seek cumulative and duplicative discovery that already has been provided or can be provided by Novozymes, and request disclosure of confidential and proprietary information. Marquis now requests that this court compel Green Plains' compliance with the subpoenas. For the following reasons, the Court will grant Marquis' motion, in part, and in part deny the motion.

## BACKGROUND

Marquis is part of an associated group of renewable energy companies based in Hennepin, Illinois. Marquis operates an ethanol facility in Hennepin producing fuel-grade ethanol and producing and selling ethanol co-products. Marquis has engineered and developed a proprietary process it calls the ProCap Process, Products, and System (collectively, "ProCap") for recovering and/or removing total suspended solids (e.g., fats, proteins, and/or fiber) from stillage byproduct generated during ethanol production. Marquis asserts its ProCap system improves the energy efficiency of manufacturing ethanol co-products and enhances the co-products' quality and value. (Filing No. 2-1).

Novozymes is a biotechnology company that, for many years, supplied Marquis with enzymes and microbes that Marquis uses in its businesses. Beginning in October 2018, Marquis and Novozymes began discussing the possibility of Novozymes joining Marquis in a partnership with respect to ProCap. According to Marquis, under their contemplated collaboration, Marquis would contribute its knowledge and expertise in protein production in ethanol refining, including use of its proprietary ProCap technology, and Novozymes would contribute its general scientific knowledge of enzymes and microbes to help Marquis refine ProCap. Novozymes emphasized its desire to develop a "high protein" business unit with a focus on developing animal feed. (Filing No. 23-7).

Between February 2019 and December 2019, Marquis and Novozymes had multiple discussions and meetings, both by email and in person at Marquis' Hennepin facility and at Novozymes' offices in North Carolina, regarding a partnership involving ProCap. Because their discussions involved sharing details of ProCap, in June 2019, representatives of Marquis and Novozymes executed a Mutual Confidentiality Agreement "to protect and preserve the confidential and/or proprietary nature of certain information and materials that may be disclosed or made available by one Party ("Discloser") to the other Party ("Recipient")." (Filing No. 2-1 at p. 20). After executing the Mutual Confidentiality Agreement, Marquis and Novozymes continued exploring a potential partnership. More than one meeting involved technical discussions of ProCap with some of Novozymes' research and development ("R&D") scientists. According to Marquis, it provided Novozymes with access to the following information relating to ProCap that Marquis considers to be its trade secrets:

1. The specific chemical and biologic processes that Marquis was using in the ProCap process.
2. The testing protocols for specific features of particular importance to the ProCap Products, such as protein concentrations.
3. The scientific hypotheses for further innovation that Marquis had developed and refined based on its testing and experience developing ProCap to date.
4. The unique equipment selection that Marquis employed Marquis's ideas behind lysing or using autolysis to break up yeast cell walls and release additional nutrients.
5. Marquis' strategic analysis of the market, and its business plans for rolling out the technology, including its licensing model.

(Filing No. 23-7 at p. 12).

On December 12, 2019, representatives from Marquis and Novozymes met to continue their partnership discussions, including discussing technical matters such as Marquis' testing parameters and procedures, equipment selection, and methodologies. Four days later—December 16, 2019—much to Marquis' surprise, Novozymes publicly announced that Novozymes was entering into an "exclusive" partnership with Green Plains, Marquis' competitor, to develop and commercialize microbial processes to generate high-protein animal feed during the ethanol production process, which had been the same goal of the Marquis partnership. According to Marquis, Novozymes acknowledged that some of its same R&D scientists that had learned about ProCap also worked on the Green Plains partnership. (Filing No. 23-7 at pp. 14-15).

On January 14, 2020, Marquis filed the Illinois action seeking emergency injunctive relief, alleging Novozymes and Green Plains misappropriated Marquis' confidential information and trade secrets. (Filing No. 2-1). Marquis' complaint alleged a claim against both Novozymes and Green Plains for violation of the Defend Trade Secrets Act, 18 U.S.C. § 1831, et. seq.; a claim against both Novozymes and Green Plains for violation of the Illinois Trade Secrets Act, 765 Ill. Comp. Stat. § 1065, et. seq.; and a claim for breach of contract against Novozymes. Marquis alleges that at the same time Novozymes was pursuing the Marquis partnership, Novozymes was secretly pursuing a partnership with Green Plains. Marquis believes that, based on its interactions with Novozymes, Novozymes is not able to pursue its partnership with Green Plains without misappropriating Marquis' trade secrets in ProCap because Novozymes and Green Plains did not have the expertise and know-how to develop a competing process without knowledge of ProCap. According to Marquis, Green Plains had previously expressed interest in licensing the ProCap technology from Marquis. (Filing No. 23-7 at p. 16).

Following a telephonic hearing on January 15, 2020, the Illinois court entered an Order in which Novozymes and Green Plains agreed not to use any confidential information shared by Marquis with Novozymes under their Mutual Confidentiality Agreement, and also set forth a discovery schedule for purposes of a preliminary injunction hearing. (Filing No. 2-2). On February 7, 2020, the court entered an agreed upon Confidentiality Order to protect confidential and/or proprietary documents disclosed by Marquis, Novozymes, and Green Plains during discovery.

(Filing No. 2-3). The Confidentiality Order contains an "Attorneys Eyes Only" provision to further protect documents that a disclosing party designates as "highly confidential."[1]

On May 12, 2020, the Illinois court denied Green Plains' motion to dismiss for lack of personal jurisdiction, subject to reassertion after permitting Marquis to conduct limited jurisdictional discovery. (Filing No. 23-4). For purposes of conducting jurisdictional discovery, on June 22, 2020, Marquis and Green Plains stipulated to remote deposition protocols. (Filing No. 2-4).

On August 25, 2020, after jurisdictional discovery concluded, the Illinois court granted Green Plains' renewed motion to dismiss for lack of personal jurisdiction. (Filing No. 23-4). On the same date, Marquis served the third-party subpoenas at issue on Green Plains. Marquis served a Rule 30(b)(6) deposition subpoena on Green Plains setting forth six topics of examination, generally concerning the 2019 discussions between Green Plains and Novozymes regarding a protein capture partnership; information provided by Green Plains to Novozymes regarding protein capture; communications between Novozymes and Green Plains regarding Marquis, ProCap, or the Illinois action; the record of development since December 1, 2019, for improvements or changes that Green Plains has implemented in connection with a protein capture system it purchased from Fluid Quip Technologies; and presentations, information, and the like, provided to Green Plains' board of directors and senior management regarding the benefits and risks of a partnership between Novozymes and Green Plains. (Filing No. 2-5 at p. 6). Marquis also served individual deposition subpoenas on Todd Becker, Green Plains' Chief Executive Officer, and Walter Cronin, Green Plains' Chief Commercial Officer. (Filing No. 2-5 at pp. 7, 10). Marquis' document subpoena contains five requests for production of documents generally related to the same topics outlined above. (Filing No. 2-6).

Green Plains objects to the subpoenas as they request discovery cumulative of discovery obtained from Novozymes, would require disclosure of trade secret or proprietary confidential information to a direct competitor, and would require Green Plains to expend significant time and expense not proportional to Marquis' need for the information. (Filing No. 22 at p. 1). Green Plains believes Marquis' subpoenas are a "fishing expedition . . . in an attempt to confirm their

---

[1] For purposes of the instant discovery dispute, Marquis has stated it is willing to further limit any distribution of Highly Confidential Information by agreeing to not provide such information to in-house counsel at Marquis. (Filing No. 2 at p. 3 n.2).

4

baseless hunch that Marquis' information – trade secret or not – is being disclosed by Novozymes." (Filing No. 22 at p. 6). Green Plains also does not concede the relevancy of any of the subpoena requests, in particular, request no. 4 of the document subpoena and topic no. 4 of the Rule 30(b)(6) subpoena, regarding the protein capture system Green Plains purchased from Fluid Quip Technologies. (Filing No. 22 at p. 6 n.4). Novozymes did not object to the subpoenas. Marquis has now filed a motion to compel requesting this court order Green Plains' compliance. (Filing No. 1).

## ANALYSIS

"[T]he scope of discovery under a subpoena is the same as the scope of discovery under Rules 26(b) and 34 and is subject to the rules that apply to other methods of discovery." *Quiles v. Union Pac. R.R. Co.*, No. 8:16CV330, 2018 WL 737403, at *1 (D. Neb. Feb. 6, 2018)(quoting *Desert Orchid Partners, LLC v. Transaction System Architects, Inc.*, 237 F.R.D. 215, 217 (D. Neb. 2006)). "Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case[.]" Fed. R. Civ. P. 26(b)(1). The scope of relevant discovery is extremely broad. "Discovery requests should be considered relevant if there is any possibility the information sought is relevant to any issue in the case and should ordinarily be allowed, unless it is clear the information sought can have no possible bearing on the subject matter of the action." *Met-Pro Corp. v. Industrial Air Technology, Corp.*, No. 8:07CV262, 2009 WL 553017, * 3 (D. Neb. March 4, 2009). "When a party issuing a subpoena makes a threshold showing that the discovery sought is relevant, a person or company resisting the subpoena bears the burden of showing that its objections are valid by providing specific explanations or factual support as to how the requested information is improper." *McGehee v. Nebraska Dep't of Corr. Servs.*, No. 4:18CV3092, 2019 WL 266423, at *2 (D. Neb. Jan. 17, 2019)(citing *Kinzer v. Remington Arms Co.*, No. 8:11-cv-75, 2011 WL 1659883, at *3 (D. Neb. May 3, 2011)). However, "'[e]ven if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.'" *Precourt v. Fairbank Reconstruction Corp.*, 280 F.R.D. 462, 467 (D.S.D. 2011).

Pursuant to Rule 45(d)(3), the court must quash or modify a subpoena that "requires disclosure of privileged or other protected matter, if no exception or waiver applies," and may

5

quash or modify a subpoena if the subpoena requires "disclosing a trade secret or other confidential research, development, or commercial information." Fed. R. Civ. P. 45(d)(3). Rule 45 also requires a court to quash or modify a subpoena that "subjects a person to undue burden." Fed. R. Civ. P. 45(d)(3)(A)(iv). In evaluating whether a subpoena presents an undue burden, courts consider the following factors: (1) the relevance of the information requested; (2) the need of the party for the information; (3) the breadth of the request; (4) the time period covered by the request; (5) the particularity with which the party describes the requested information; and (6) the burden imposed. *Wiwa v. Royal Dutch Petroleum Co.*, 392 F.3d 812, 818 (5th Cir. 2004). "'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'" *Miscellaneous Docket Matter No. 1 v. Miscellaneous Docket Matter No. 2*, 197 F.3d 922, 927 (8th Cir. 1999) (quoting *Cusumano v. Microsoft Corp.*, 162 F.3d 708, 717 (1st Cir. 1998)).

### I. Deposition Subpoenas

Marquis asks the Court to compel remote depositions of Green Plains' CEO, Todd Becker, and Green Plains' CCO, Walter Cronin, as well as a remote Rule 30(b)(6) deposition of Green Plains covering the following six topics of examination:

1. The discussions, negotiations, and/or meetings between Green Plains and Novozymes in 2019 relating to a possible partnership or collaboration on Protein Capture.
2. Any information provided to Green Plains by Novozymes regarding Protein Capture since December 1, 2019.
3. Any communications between Novozymes and Green Plains regarding Marquis, ProCap, or this Lawsuit.
4. Green Plains' purchase, installation, and/or plans for the Protein Capture system purchased from Fluid Quip Technologies.
5. The record of development since December 1, 2019 for any chemical, biological, and/or enzymatic improvements or changes that Green Plains is developing and/or implementing in connection with the Protein Capture system that it purchased from Fluid Quip Technologies.
6. All presentations, reports, or information provided to the Board of Directors and/or Senior Management of Green Plains regarding the benefits, opportunities, and/or risks related to the partnership between Novozymes and Green Plains.

(Filing No. 2-5 at p. 6).

Green Plains, Becker, and Cronin object to the deposition subpoenas on the grounds that the subpoenas place an undue burden on them because Marquis seeks disclosure of confidential and proprietary information and because the information is duplicative of information that can be obtained from Novozymes. ([Filing No. 22 at pp. 14-15](#)).

First, the Court agrees with Marquis that testimony from Green Plains will not necessarily be duplicative of testimony from Novozymes' witnesses. Green Plains does not contend it has *no* potentially relevant information, just that Marquis can depose Novozymes representatives instead. However, individuals' recollections and understanding of conversations may differ. Therefore, Marquis should be permitted to explore Green Plains' memory and knowledge of relevant events and conversations with Novozymes. Accordingly, topics 1, 3, and 6 on the record before the Court are appropriate inquiries because, in general, they seek information that may be relevant to the factual basis for Marquis' claims against Novozymes. Green Plains may of course object to specific questions that would require disclosure of Green Plains' proprietary or confidential information.

Next, topic 2, which seeks to inquire about "Any information provided to Green Plains by Novozymes regarding Protein Capture since December 1, 2019," is overly broad and would encompass proprietary, confidential, and/or irrelevant information. "Protein Capture" is defined by Marquis to mean "the recovery and/or removal of total suspended solids (i.e., fats, proteins, and/or fiber) from whole stillage or thin stillage by-product generated during ethanol production." Marquis is trying to determine whether Novozymes provided *Marquis'* proprietary information to Green Plains to develop a competing protein capture process and whether that process incorporates any aspects of ProCap. But topic 2 broadly encompasses *any* information Novozymes may have shared with Green Plains on protein capture, regardless of whether it came from Marquis or another source. Marquis is entitled to inquire about its specific and identifiable trade secrets that Novozymes may have provided to Green Plains, but Green Plains does not have to answer questions about development of its competing protein capture process outside that scope.

The Court also agrees with Green Plains that topics 4 and 5, as written, plainly seek Green Plains' proprietary information that does not appear relevant to the Illinois action. None of Marquis' briefing explains why Green Plains' purchase of a protein capture system from another entity, Fluid Quip Process Technology, LLC, has any bearing on Marquis' claims that Novozymes stole and shared Marquis' proprietary information with Green Plains. During jurisdictional discovery, Green Plains' responded to an interrogatory that in August 2018 it contracted to

purchase patented technology known as the "MSC™ System," created by Fluid Quip Technology, to conduct a stillage protein separation system at one of Green Plains' ethanol plants. (Filing No. 23-6 at p. 14). Marquis does not explain the connection between its claims against Novozymes and Green Plains' acquisition of the MSC™ System from Fluid Quip Technology. Therefore, the Court finds Marquis has not met its threshold burden to show the relevance of topics 4 and 5 to the Illinois action.

In sum, the Court will permit Marquis to proceed with a remote Rule 30(b)(6) deposition of Green Plains with the topic limitations explained above. Marquis has agreed to limit the deposition to four hours. Marquis also agreed that it would schedule the deposition at mutually agreeable dates and times to the parties and witnesses. The Court finds these limitations are reasonable and minimizes the burden upon Green Plains.

Green Plains also argues the depositions of Becker and Cronin, as high-level executives, are prohibited under the "apex deposition rule," which generally "requires a party seeking to depose a high-level corporate executive to demonstrate (1) that the executive has unique or special knowledge of the facts at issue and (2) other less burdensome avenues for obtaining the information have been exhausted." *Dawkins v. Barnhart Crane & Rigging Co.*, No. 8:18CV534, 2020 WL 1535851, at *1 (D. Neb. Mar. 31, 2020)(Nelson, M.J.)(citing *Wetch v. Crum & Forster Commercial Ins.*, No. 5:17-CV-05033-JLV, 2019 WL 283654, at *2 (D.S.D. Jan. 22, 2019). The rule is "aimed to prevent the high level official deposition that is sought simply because he is the CEO or agency head--the top official, not because of any special knowledge of, or involvement in, the matter in dispute." *Minter v. Wells Fargo Bank, N.A.*, 258 F.R.D. 118, 126 (D. Md. 2009). Nevertheless, "A motion seeking to prevent the taking of a deposition is regarded unfavorably by the courts, and it is difficult to persuade a court to do so." *Raml v. Creighton Univ.*, No. 8:08CV419, 2009 WL 3335929, at *2 (D. Neb. Oct. 15, 2009)(Gossett, M.J.)(citing *Static Control Components, Inc. v. Darkprint Imaging,* 201 F.R.D. 431, 434 (M.D.N.C. 2001)).

Green Plains asserts that Marquis has not demonstrated that Becker or Cronin have unique, non-repetitive information such that their depositions should be permitted. But, in Green Plains' answers to interrogatories in the Illinois action, it identified Becker and Cronin as individuals involved in negotiations of a potential partnership with Novozymes that began on June 27, 2019. (Filing No. 23-6 at p. 11). During a deposition of Kurt Creamer, one of Novozymes' R&D scientists, he identified Cronin as being involved in regularly scheduled project review calls with

Green Plains. (Filing No. 29-5). The record also reflects that Cronin sent emails to Green Plains in 2019 generally indicating his involvement in the Novozymes partnership project was more than simply as a figurehead. Additionally, Becker was cc-ed on emails and made statements in the Novozymes-Green Plains partnership announcement indicating familiarity with details of the partnership. (Filing No. 29-3; Filing No. 29-1). The apex-deposition rule is designed to prevent depositions of a CEO or other top official based solely upon the fact that such individual holds that position. That does not appear to be the purpose of these depositions. Marquis should be permitted to explore Becker and Cronin's knowledge and recollection of events relevant to Marquis' claims against Novozymes. Marquis has agreed to limit Becker's deposition to three hours and Cronin's deposition to three and a half hours. The depositions were already noticed to be conducted remotely. Marquis also agreed that it would schedule the depositions at mutually agreeable dates and times to the parties and witnesses. (Filing No. 28 at pp. 2-3). Under the circumstances, and with the limitations outlined by Marquis, the Court finds that Marquis should be permitted to proceed with the remote depositions of Becker and Cronin.

## II.     Document Subpoena

Marquis' document subpoena to Green Plains seeks information similar to the Rule 30(b)(6) topics discussed above. In assessing the relevance and proportionality of Marquis' requests, it is important to outline Green Plains' relationship to the Illinois action. Green Plains is a direct competitor of Marquis and is no longer a defendant in the Illinois action. Prior to Green Plains' dismissal, Marquis' complaint simply alleged that "[o]n information and belief" Green Plains misappropriated Marquis' trade secrets by enticing Novozymes into a partnership. Marquis appears to have formed this belief based upon the simultaneous timing of Novozymes' partnership discussions with Marquis and with Green Plains. (Filing No. 2-1 at p. 12). Marquis also supplied an affidavit stating that Green Plains previously expressed interest in licensing the ProCap technology from Marquis. (Filing No. 23-7 at p. 16). The record also contains evidence that Novozymes had some of its same R&D scientists working on both partnership projects. Finally, Novozymes and Green Plains' partnership focuses on commercializing microbial processes to generate high-protein animal feed during the ethanol production process, which had been the same goal of the Marquis partnership as to ProCap.

9

Marquis' remaining claims against Novozymes are premised on the allegation that Novozymes stole and shared Marquis' proprietary ProCap information with Green Plains. The Court generally agrees with Green Plains that, because its only involvement in the Illinois action relates to its alleged receipt of Marquis' proprietary information from Novozymes, Novozymes would be in possession of most of the documents sought by Marquis. Marquis is entitled to discover what, if any, of Marquis' proprietary information was provided *to* Green Plains *by* Novozymes. Novozymes would be in possession of those documents. Marquis has not asserted that Novozymes' production of documents has been inadequate or that Novozymes is no longer in possession of any responsive documents.

Marquis argues its document requests "may either contradict or corroborate the documents produced by Novozymes in discovery." (Filing No. 2 at p. 13). Unlike deposition testimony, the Court fails to see how documents provided by Green Plains could contradict or corroborate documents provided by Novozymes. And, "serving a document subpoena on a nonparty to confirm what was already produced by a party is not reasonable to avoid undue burden or expense, or proportional to the needs of the case." *ACI Worldwide Corp. v. Mastercard Techs.*, LLC, No. 8:14CV31, 2016 WL 3647850, at *5 (D. Neb. July 1, 2016)(Gossett, M.J.)(citing Fed. R. Civ. P. 26(b)(2)). Therefore, the Court finds that Marquis' requests are largely duplicative, cumulative, and can be obtained more convenient source -- Novozymes. See Fed. R. Civ. P. 26(b)(2)(The court must limit discovery otherwise allowed if "the discovery sought is unreasonably cumulative or duplicative, or can be obtained from some other source that is more convenient, less burdensome, or less expensive[.]"). The Court does not foreclose the possibility that, at a later date, Marquis may be able to show a change in circumstances or new information learned during the course of discovery showing a need to obtain limited documents from Green Plains. But, on the record before the Court, Marquis has not met its burden. The Court will also address each of Marquis' individual requests below.

Request No. 1 seeks "All documents relating to discussions between Novozymes and Green Plains in 2019 regarding a possible partnership or collaboration on Protein Capture," including "any communications between Novozymes and Green Plains regarding the subject of this request." In response, Green Plains agreed to produce limited, redacted Board of Director's Meeting materials which identify a potential partnership or collaboration regarding the enzyme project identified within its Joint Development Agreement and limited internal e-mail

communications regarding the potential Joint Development Agreement between Novozymes and Green Plains. (Filing No. 23-6 at p. 82). Green Plains otherwise withheld documents that may be responsive and argues that any other communications, discussions, negotiations and/or meetings between Green Plains and Novozymes in 2019 relating to a possible partnership or collaboration on protein capture is readily available from Novozymes. (Filing No. 2-7 at p. 7). Green Plains filed a declaration from its Chief Legal and Administration Officer stating that a search of documents responsive to this request (as well as request nos. 2 and 4) would require a search for every single communication or document that involves the removal of protein, fat and/or fiber, and would yield a significant volume of results that are entirely unrelated to the subject matter of the litigation, and based upon an initial review, would require the search of at least six custodians yielding over 25,000 documents. Reviewing that volume of documents would require the assistance of at least four Green Plains' technically trained employees and outside counsel for a time period of at least 250 hours of baseline review prior to initiating any production efforts. (Filing No. 23-1).

Marquis asserts this request is not duplicative because "it is . . . possible that Green Plains' senior management's evaluation of the benefits of its potential partnership with Novozymes may have included internal discussions about the benefits of partnering with an entity (Novozymes) that was engaged in a thorough download of trade secrets and confidential information from Green Plains' competitor – Marquis." (Filing No. 28 at pp. 3-4). The Court finds the burden to Green Plains outweighs the minimal relevance asserted by Marquis. Moreover, Novozymes is in the best position to provide Marquis with documents related to Novozymes' discussions with Green Plains on a protein capture partnership and whether Novozymes shared Marquis' proprietary information with Green Plains during those discussions. See *Precourt*, 280 F.R.D. at 467 ( "'Even if relevant, discovery is not permitted where no need is shown, or compliance would be unduly burdensome, or where harm to the person from whom discovery is sought outweighs the need of the person seeking discovery of the information.'"); *Miscellaneous Docket Matter No. 1*, 197 F.3d at 927 ("'[C]oncern for the unwanted burden thrust upon non-parties is a factor entitled to special weight in evaluating the balance of competing needs.'").

Request No. 2 seeks, "All documents after December 1, 2019 referring or relating to any information provided to Green Plains by Novozymes regarding Protein Capture. This request includes, but is not limited to, any communications between Novozymes and Green Plains

11

regarding the subject of this request." Green Plains objects to this request as vague, overbroad, duplicative and cumulative, and as seeking confidential information or proprietary trade secrets. (Filing No. 23-6 at p. 82-84). For the same reasons discussed above as to the Rule 30(b)(6) deposition subpoena, this request is overly broad and would encompass proprietary, confidential, and/or irrelevant information because it broadly includes *any* information Novozymes may have shared with Green Plains on protein capture, regardless of whether it came from Marquis or another source. And, because the request pertains to information provided *to* Green Plains *by* Novozymes, Novozymes would be in possession of the relevant and responsive documents.

Request No. 3 seeks, "All communications between Novozymes and Green Plains relating to Marquis, ProCap, and/or this Lawsuit." Green Plains objects that this request is overbroad, implicates documents that are subject to attorney-client and/or work product privileges, would be available from Novozymes, and places an undue burden on Green Plains. Notwithstanding the objections, Green Plains responded it conducted a good faith search of its e-mail communications and hard copy documentation and is not withholding any responsive, non-privileged communications between Novozymes and Green Plains which identify, mention or discuss "Marquis" or Green Plains' understanding of "ProCap" pursuant to the publicly disclosed Marquis patent. (Filing No. 23-6 at pp. 84-85). The Court finds that Green Plains has adequately responded to this request and that Novozymes would be in the best position to provide relevant documents regarding communications with Green Plains.

Request No. 4 requests "All documents since December 1, 2019 evidencing the record of development for any chemical, biological, and/or enzymatic improvements or changes that Green Plains is developing and/or implementing in connection with the Protein Capture system that it purchased from Fluid Quip Technologies." Green Plains objects as this requests production of confidential or trade secret information. (Filing No. 23-6 at pp. 85-86). As discussed above, Marquis does not explain the connection between its claims against Novozymes and Green Plains' acquisition of the MSC™ System from Fluid Quip Technology. Additionally, this request plainly seeks Green Plains' confidential and proprietary information. Therefore, the Court finds Marquis has not met its threshold burden to show the relevance and necessity of this request.

Request No. 5 asks for "All presentations, reports, or information provided to the Board of Directors and/or Senior Management of Green Plains regarding the benefits, opportunities, and/or risks related to the partnership between Novozymes and Green Plains." Green Plains responded

it will produce limited documentation identifying a discussion held in 2019 at a Board of Directors' Meeting outlining the potential opportunity for collaboration on protein research and development efforts with Novozymes, but was not producing any specific financial information associated with an evaluation of risks or opportunities associated with Novozymes to protect its highly confidential and proprietary information. Green Plains also responded that all presentations made by Novozymes to Green Plains regarding benefits and opportunities to collaborate have previously been produced by Novozymes. (Filing No. 23-6 at pp. 87-88). The Court agrees with Green Plains that this request is duplicative and cumulative of discovery that can be obtained from Novozymes.

### III. Attorney's Fees

Green Plains has requested attorney's fees in connection with this motion. Under Fed. R. Civ. P. 45(d)(1), "[a] party or attorney responsible for issuing and serving a subpoena must take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." The court "must enforce this duty and impose an appropriate sanction—which may include lost earnings and reasonable attorney's fees—on a party or attorney who fails to comply." Fed. R. Civ. P. 45(d)(1); see also Fed. R. Civ. P. 37(a)(5)(directing a court to award attorney's fees if a motion to compel was not substantially justified ).

The Court finds that an award of attorney fees is inappropriate under the circumstances. The Court granted Marquis' motion to compel in part. Marquis did attempt to limit its discovery requests as it only served five document requests limited to a narrow time period. So, although the Court found that Green Plains should not be compelled to produce documents in response to the document subpoena, Marquis did take reasonable steps to avoid imposing an undue burden on Green Plains. Marquis also appears to have acted in good faith and in reliance on the Illinois court's statement that the served discovery would be allowed to go forward as to Green Plains. (Filing No. 28 at p. 2). Therefore, the Court will deny Green Plains' request for attorney's fees.

**IT IS ORDERED**:
1. Marquis ProCap System, LLC's Motion to Compel (Filing No. 1) is granted, in part, and denied in part, as set forth above;
2. No attorney's fees and costs are awarded; and

3. If no party files an objection to this Order on or before **January 27, 2021**, the Clerk of the Court shall terminate this case for statistical purposes. Failure to timely object may constitute a waiver of any objection to this Order. See NECivR 72.2.

Dated this 13th day of January, 2021.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge
