IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | |
|---|---|
| MARQUIS PROCAP SYSTEM, LLC, | |
| Plaintiffs, | 8:20CV395 |
| vs. | ORDER |
| NOVOZYMES NORTH AMERICA, INC., | |
| Defendant. | |

This matter is once again before the Court on a discovery dispute arising out of a lawsuit filed by Marquis ProCap System, LLC ("Marquis") against Novozymes North America, Inc., ("Novozymes") in the United States District Court for the Central District of Illinois, *Marquis ProCap System, LLC v. Novozymes North America, Inc.*, Case No. 1:20-cv-1020 (the "Illinois Lawsuit"). Previously, this Court partially granted Marquis' motion to compel a non-party witness, Green Plains Inc. ("Green Plains"), to comply with deposition and document subpoenas. ([Filing No. 35](#)), but limited the scope of relevant discovery after considering much of the same information could be obtained from Novozymes. ([Filing No. 35](#)). Now, third-party witnesses, Fluid Quip Technologies, LLC ("Fluid Quip"), John Kwik ("Kwik"), Neal Jakel ("Jakel"), and Green Plains (collectively, "Third-Party Witnesses") have filed a Motion for Protective Order and/or Modification ([Filing No. 44](#)) to limit the scope of deposition subpoenas served by Marquis and Novozymes, asserting the subpoenas seek the Third-Party Witnesses' proprietary and confidential information and exceed the scope of discovery previously ordered by the Court. Relatedly, Marquis has filed a Motion to Compel Todd Becker to Properly Answer Deposition Questions Relevant to Marquis' Claims Against Novozymes ([Filing No. 61](#)), asserting Becker improperly refused to answer questions during his deposition. The Court held oral argument on the motions and the matter is now fully submitted.

## BACKGROUND

Marquis operates an ethanol facility producing fuel-grade ethanol and producing and selling ethanol co-products. Marquis engineered and developed a proprietary process it calls the ProCap

Process, Products, and System ("ProCap") for recovering and/or removing total suspended solids (e.g., fats, proteins, and/or fiber) from stillage byproduct generated during ethanol production. (Filing No. 2-1). Novozymes is a biotechnology company that supplied Marquis with enzymes and microbes that Marquis uses in its businesses. Beginning in October 2018, Marquis and Novozymes began discussing the possibility of Novozymes joining Marquis in a partnership with respect to ProCap. According to Marquis, under their contemplated collaboration, Marquis would contribute its knowledge and expertise in protein production in ethanol refining, including use of its proprietary ProCap technology, and Novozymes would contribute its general scientific knowledge of enzymes and microbes to help Marquis refine ProCap. (Filing No. 23-7). Between February 2019 and December 2019, Marquis and Novozymes repeatedly discussed a potential partnership, during which Marquis alleges it shared what it considers its proprietary or trade secret information with Novozymes after entering into a Mutual Confidentiality Agreement to protect the confidential and/or proprietary nature of that information. (Filing No. 2-1 at p. 20). But, in December 2019, Novozymes publicly announced that Novozymes was entering into an exclusive partnership regarding the same goal with Green Plains, Marquis' competitor.

On January 14, 2020, Marquis filed a lawsuit in the Central District of Illinois, alleging Novozymes stole, and either shared or inevitably will share Marquis' proprietary information related to its patented ProCap technology with Green Plains to develop a competing protein capture process. According to Marquis, it provided Novozymes with access to the following information relating to ProCap that Marquis considers to be its trade secrets:

1. The specific chemical and biologic processes that Marquis was using in the ProCap process.
2. The testing protocols for specific features of particular importance to the ProCap Products, such as protein concentrations.
3. The scientific hypotheses for further innovation that Marquis had developed and refined based on its testing and experience developing ProCap to date.
4. The unique equipment selection that Marquis employed Marquis's ideas behind lysing or using autolysis to break up yeast cell walls and release additional nutrients.
5. Marquis' strategic analysis of the market, and its business plans for rolling out the technology, including its licensing model.

(Filing No. 23-7 at p. 12).

In the prior discovery dispute, Marquis asked the Court to compel remote depositions of Green Plains' CEO, Todd Becker, and Green Plains' CCO, Walter Cronin, as well as a remote Rule 30(b)(6) deposition of Green Plains covering the following six topics of examination:

1. The discussions, negotiations, and/or meetings between Green Plains and Novozymes in 2019 relating to a possible partnership or collaboration on Protein Capture.
2. Any information provided to Green Plains by Novozymes regarding Protein Capture since December 1, 2019.
3. Any communications between Novozymes and Green Plains regarding Marquis, ProCap, or this Lawsuit.
4. Green Plains' purchase, installation, and/or plans for the Protein Capture system purchased from Fluid Quip Technologies.
5. The record of development since December 1, 2019 for any chemical, biological, and/or enzymatic improvements or changes that Green Plains is developing and/or implementing in connection with the Protein Capture system that it purchased from Fluid Quip Technologies.
6. All presentations, reports, or information provided to the Board of Directors and/or Senior Management of Green Plains regarding the benefits, opportunities, and/or risks related to the partnership between Novozymes and Green Plains.

([Filing No. 2-5 at p. 6](#)). The Court found topics 1, 3, and 6 were appropriate inquiries because, in general, they sought information that may be relevant to the factual basis for Marquis' claims against Novozymes. The Court recognized that "Green Plains may of course object to specific questions that would require disclosure of Green Plains' proprietary or confidential information." As to topic 2, the Court found it was overly broad as written and would encompass proprietary, confidential, and/or irrelevant information. As such, the Court limited topic 2, stating, "Marquis is entitled to inquire about its specific and identifiable trade secrets that Novozymes may have provided to Green Plains, but Green Plains does not have to answer questions about development of its competing protein capture process outside that scope." ([Filing No. 35 at p. 7](#)).

The Court also found that topics 4 and 5, as written, sought Green Plains' proprietary information that did not appear relevant to the Illinois action, largely because Marquis did not explain how Green Plains' purchase of Fluid Quip's patented "MSC™ System" (a mechanical protein separation system) in August 2018 had "any bearing on Marquis' claims that Novozymes stole and shared Marquis' proprietary information with Green Plains" in 2019. ([Filing No. 35 at p. 7](#)). Fluid Quip's patent for the MSC System was issued on July 15, 2014, Green Plains contracted to purchase the MSC technology in August 2018, and installed the system at Green Plains' ethanol plant in Shenandoah, Iowa thereafter. On December 9, 2020, Fluid Quip became a majority owned subsidiary of Green Plains and changed its principal place of business to Green Plains' location in Omaha. Jakel and Kwik are both Managing Directors of Fluid Quip. ([Filing No. 48-1 at p. 1](#)).

One of the main disagreements before the Court arises out of the parties' differing interpretations of the Court's prior order. During Becker's deposition, he or his counsel answered or objected, "confidential," to several questions based upon their understanding of the Court's prior order. Marquis uses the following examples as inappropriate responses to permissible questions:

> Q. Does Novozymes -- have they contributed to any project intellectual property to your joint venture or your joint development agreement?
> MS. GLENN: Object to form and foundation.
> A. That's confidential.
> Q. Is that owned by Novozymes, or is it owned by Green Plains?
> A. Confidential.
> . . .
> Q. Has Novozymes suggested any enzymes for you to use in the protein separation system?
> A. Confidential.
> . . .
> Q. What contributions does Novozymes make to Green Plains -- to the joint development of Green Plains?
> A. Highly confidential.
> MS. GLENN: Also, preceding the answer, renew my objections for form, foundation, and to the extent it requires disclosure of confidential proprietary information of Green Plains that it would exceed the scope of the court order.

(Filing No. 66-4 at pp. 21-22). Marquis asserts Becker's refusal to answer questions based upon confidentiality objections was inappropriate because (1) a Joint Development Agreement ("JDA") (Filing No. 53-1) between Green Plains and Novozymes designates the information sought by Marquis as Novozymes' intellectual property rather than Green Plains' intellectual property, and (2) Becker's testimony could (and was) designated as Highly Confidential – Attorneys' Eyes Only under the Confidentiality Order in the Illinois Lawsuit, which is adequate protection for the non-parties' confidential and trade secret information. (Filing No. 61 at p. 2). Therefore, Marquis has filed a motion to compel Becker to appear for a second deposition to properly answer questions related to its claims against Novozymes and seeks costs and fees related to the motion.[1] (Filing No. 61).

The other dispute before the Court concerns deposition subpoenas served upon the Third-Party Witnesses. Marquis and Novozymes both served deposition subpoenas on Kwik and Jakel;

---

[1] As a compromise, Marquis has offered to depose another Green Plains employee with relevant knowledge in lieu of Becker, such as one of Green Plains' scientists. (Filing No. 61 at p. 2; Filing No. 82).

4

Novozymes served a 30(b)(6) subpoena on Fluid Quip. The Third-Party Witnesses have moved for a protective order and/or order to modify the subpoenas to (1) prohibit inquiry into the confidential and proprietary information of Green Plains and Fluid Quip, and (2) limit each of Kwik and Jakel's depositions to 3.5 hours, given that they are high level executives with information that could be gained elsewhere. The Third-Party Witnesses recognize Kwik and Jakel likely have some high-level relevant information to the issues in the Illinois action related to the MSC System and Novozymes' experience in the ethanol industry regarding protein separation technology and the application of Novozymes' products, but ask that the Court extend the same limitations and protections of its prior Order to their depositions.[2] (Filing No. 45 at p. 3).

Marquis contends it is not seeking Green Plains' confidential information; rather, pursuant to the JDA between Novozymes and Green Plains, Marquis asserts the information it seeks belongs to Novozymes and is "expressly designated as 'Novozymes IP.'" Marquis also asserts the confidentiality of the information sought from Kwik and Jakel is fully protected by the Confidentiality Order (Filing No. 53-2) containing an Attorney's Eyes-Only provision entered in the Illinois court. (Filing No. 51 at pp. 1-2). Marquis maintains it is seeking information related to two questions: (1) Has Novozymes disclosed Marquis' contractually protected proprietary information to Green Plains? and (2) What is the risk Novozymes will inevitably use such protected information? (Filing No. 82).

As to the request to limit the duration of the depositions, Marquis is agreeable to limiting the duration of the depositions of Kwik and Jakel to 3.5 hours each. (Filing No. 51 at p. 10). Novozymes is also agreeable to limit the duration of the depositions, but requests the Court allot two hours of deposition time per party, per witness, to ensure Marquis and Novozymes receive an equal amount of time. (Filing No. 54 at pp. 1-2). The Third-Party Witnesses continue to request an order to modify the subpoenas to restrict the duration of Kwik and Jakel's depositions to 3.5 hours each, but have no objection to that time being split equally between Marquis and Novozymes. (Filing No. 57 n. 8). Because Marquis and the Third-Party Witnesses agree on this issue, the Court

---

[2] Novozymes does not oppose extending the general terms of the Court's prior Order to the current discovery dispute, but disagrees with the Third-Party Witnesses' characterizations of the Court's prior Order. (Filing No. 54).

will limit the duration of each deposition to 3.5 hours; Marquis and Novozymes should endeavor to split the time equally.[3]

## ANALYSIS

### I. Third-Party Witnesses' Motion for Protective Order

"Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case," considering a variety of factors. Fed. R. Civ. P. 26(b)(1). "Rule 26(b) of the Federal Rules of Civil Procedure is widely recognized as a discovery rule which is liberal in scope and interpretation[.]" *Hofer v. Mack Trucks, Inc.*, 981 F.2d 377, 380 (8th Cir. 1992) (citation omitted). But, "[w]hile the standard of relevance in the context of discovery is broader than in the context of admissibility . . . this often intoned legal tenet should not be misapplied so as to allow fishing expeditions in discovery," and "[s]ome threshold showing of relevance must be made before parties are required to open wide the doors of discovery and to produce a variety of information which does not reasonably bear upon the issues in the case." *Id.* (internal citations omitted). A court may issue a protective order to prevent or limit discovery to "protect a party or person from annoyance, embarrassment, oppression or undue burden or expense," including "forbidding the disclosure of discovery," "forbidding inquiry into certain matters," or "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way." Fed. R. Civ. P. 26(c)(1). The moving party bears the burden to demonstrate good cause for the issuance of the protective order. *Prism Techs. LLC v. AT&T Mobility, LLC*, 2014 WL 3670949, at *1 (D. Neb. July 23, 2014) (citations omitted). For good cause to exist, "the parties seeking protection must show that specific prejudice or harm will result if no protective order is granted." *Vishay Dale Electrs., Inc. v. Cyntec Co., Ltd.*, 2008 WL 4372765, *3 (D. Neb. Sept. 22, 2008) (citation omitted). "Rule 26(c) confers broad discretion on the trial court to decide when a protective order is appropriate and what degree of protection is required." *Seattle Times Co. v. Rhinehart*, 467 U.S. 20, 36 (1984)).

---

[3] The Court expects no gamesmanship between counsel and the parties in completing both depositions within the allotted time frame. Marquis will be allowed to proceed first with each deposition; given Novozymes' expressed concern, each deposition may, if necessary to allow equal time, be extended beyond the allotted time but in no event past 4 hours total.

Additionally, when proprietary or trade secret information is sought, "the party opposing discovery must show that the information is a trade secret or other confidential research, development, or commercial information . . . and that its disclosure would be harmful to the party's interest in the property." *In re Remington Arms Co.*, 952 F.2d 1029, 1032 (8th Cir. 1991) (quotation omitted). "The burden then shifts to the party seeking discovery to show that the information is relevant to the subject matter of the lawsuit and is necessary to prepare the case for trial." *Id.* (citations omitted). "If the party seeking discovery shows both relevance and need, the court must weigh the injury that disclosure might cause to the property against the moving party's need for the information." *Id.* (citing *Coca-Cola Bottling Co. v. Coca-Cola Co.*, 107 F.R.D. 288, 293 (D. Del. 1985)).

The Third-Party Witnesses first assert Marquis has not made a threshold showing that any of Green Plains' or Fluid Quip's confidential and proprietary information sought during Kwik and Jakel's depositions is relevant to Marquis' claims that Novozymes stole and shared or will inevitably share Marquis' proprietary information with Green Plains. The Third-Party Witnesses further contend the Court has already found that: Green Plains' confidential and proprietary information is irrelevant to the underlying lawsuit; Green Plains' acquisition of Fluid Quip's MSC System is irrelevant to Marquis' claims against Novozymes; that the record of development for improvements or changes that Green Plains implemented to the MSC System is irrelevant; that the Court "expressly ruled Green Plains' confidential and proprietary information is irrelevant to the Illinois Litigation;" and that "Marquis cannot inquire as to *any* information Novozymes may have shared on protein capture generally, regardless of whether it came from Marquis or another source." (Filing No. 45 at pp. 6-8).

The Court does not read its prior Order as restrictively as the Third-Party Witnesses do. Marquis is seeking discovery to determine whether Novozymes provided or inevitably will provide Marquis' proprietary information to Green Plains to develop a competing protein capture process, and whether that process incorporates any aspects of ProCap. The Court's prior Order sought to balance Marquis' need for discovery relevant to its claims with the burden thrust upon its non-party competitor, Green Plains, and the potential harm to Green Plains in disclosing proprietary and confidential information to its competitor. But, contrary to the Third-Party Witnesses' assertions, the Court did not find Green Plains' confidential and proprietary information is completely "irrelevant" to Marquis' claims. This Court recognized, "Marquis is entitled to discover what, if

any, of Marquis' proprietary information was provided to Green Plains by Novozymes," and that "Marquis is entitled to inquire about its specific and identifiable trade secrets that Novozymes may have provided to Green Plains[.]" That may necessarily involve Marquis inquiring into subject matters that Green Plains considers confidential. And when the Court stated Green Plains "does not have to answer questions about development of its competing protein capture process outside that scope," the Court was attempting to limit Green Plains from having to disclose carte blanche how it developed its competing protein capture process; however, if any part of that development was derived from Marquis' information disclosed from Novozymes, such information is also discoverable. Finally, although the Court did find Marquis' deposition topic 2, which sought "Any information provided to Green Plains by Novozymes regarding Protein Capture since December 1, 2019," was overbroad as written, it was not because that entire line of inquiry is completely irrelevant, but was instead because "any information" implied Marquis could also broadly inquire about information Novozymes shared with Green Plains regarding protein capture that did not originate from Marquis. If Novozymes provided Green Plains with information regarding protein capture that did originate from Marquis, that would be relevant and discoverable.

Previously, the Court also found Marquis' deposition topics regarding the Fluid Quip system "did not appear relevant" because none of Marquis' briefing addressed Fluid Quip's connection to the underlying lawsuit or state that Fluid Quip's MSC System was the competing protein capture process Green Plains was developing, allegedly with the aid of Marquis' proprietary information disclosed from Novozymes.[4] (Filing No. 35 at pp. 7-8). The information before the Court reflected Green Plains had purchased the MSC System from Fluid Quip in August 2018, prior to when Marquis and Novozymes first began discussing a potential partnership, and the MSC system's patent dated back to 2014. Green Plains also pointed to a Declaration authored by Jason Marquis wherein he stated that, during his partnership discussions with Novozymes, Novozymes had disclosed it was "performing some efforts at facilities using Fuel [sic] Quip Process Technologies ("FQPT") to improve the protein recovery in FQPT's operations," but that FQPT "employs a different, capital intensive approach to protein recovery, and thus is not a direct competitor to ProCap." (Filing No. 23-7 at p. 7).

---

[4] Marquis had sought to depose Green Plains about "the record of development since December 1, 2019 regarding any chemical, biological, and/or enzymatic improvements or changes" for the Fluid Quip technology, which the Court found was overbroad considering the request was not limited to information provided by Novozymes. (Filing No. 35 at pp. 7-8).

In the materials currently before the Court, however, the connection between Fluid Quip, the MSC System, and Marquis' claims is clear. Fluid Quip is now a majority owned subsidiary of Green Plains and changed its principal place of business to Green Plains' location in Omaha. Jakel and Kwik are both Managing Directors of Fluid Quip. Marquis also asserts that documents produced by Novozymes relating to trial runs Novozymes was conducting at Green Plains' plant in Shenandoah, where the MSC System is installed, "suggest that there may have been active discussions regarding potential changes, modifications, and/or tweaks to the MSC™ System in order to achieve a higher protein concentration without losing the system that reference information Marquis disclosed to Novozymes in its discussions regarding ProCap." (Filing No. 51 at p. 5). Marquis also points to a PowerPoint presentation (purportedly) authored by Kurt Creamer, a Novozymes scientist involved in the Marquis-Novozymes partnership discussions, wherein Creamer references proteases and lipases in the context of improving or tweaking the MSC System, an idea Marquis states was discussed during a September 23, 2019, meeting involving Creamer. Thus, although Marquis did say the MSC System is different from ProCap, that does not mean Marquis' proprietary information could not be used to enhance or improve the MSC System with information disclosed from Novozymes. (Filing No. 51 at pp. 6-7).

After review of the record before the Court, it finds Marquis has demonstrated that the Third-Party Witnesses may possess discoverable information relevant to Marquis' claims against Novozymes, but, for the same reasons discussed by the Court in its prior Order, it finds that the Third-Party Witnesses are entitled to some measure of protection from disclosing their own confidential and proprietary information in litigation to which they are not parties, to the extent that proprietary information was developed or enhanced independently from Marquis' proprietary information disclosed by Novozymes.[5] See Fed. R. Civ. P. 26(c)(1) (permitting a court to enter a protective order "requiring that a trade secret or other confidential research, development, or commercial information not be revealed or be revealed only in a specified way"); see also *ACI Worldwide Corp. v. Mastercard Techs., LLC*, No. 8:14CV31, 2016 WL 3647850, at *3 (D. Neb.

---

[5] Marquis asserts that the information it seeks is actually considered Novozymes' intellectual property under the JDA between Novozymes, and thus contends Green Plains cannot refuse to provide information that does not belong to it. (Filing No. 51 at p. 13; Filing No. 78 at p. 3). However, that does not mean the Third-Party Witnesses cannot also consider the information sought to be "confidential research, development, or commercial information" requiring protection under Fed. R. Civ. P. 26(c)(1). The JDA separately defines "Confidential Information" to include "proprietary information, data or materials disclosed or made available" by one party to another, including developments and data regarding formulations, assays, techniques, enzymes, procedures, microorganisms, marketing and pricing information, etc. (Filing No. 53-1 at p. 3).

July 1, 2016) (limiting depositions of a non-party competitor to questions regarding the plaintiff's confidential and proprietary information that the defendant sent to the non-party in developing a competing product). As such, the Court will extend the general terms of its prior Order to the depositions of the Third-Party Witnesses; specifically, "Marquis is entitled to discover what, if any, of Marquis' proprietary information was provided to [the Third-Party Witnesses] by Novozymes, and, "Marquis is entitled to inquire about its specific and identifiable trade secrets that Novozymes may have provided to [the Third-Party Witnesses]," including, but not limited to, Marquis' information Novozymes may have provided to improve or enhance the MSC protein separation system, and any changes or actions taken by the Third-Party Witnesses in response to information shared by Novozymes that originated from Marquis.

However, the parties appear to have different understandings of the Court's limitations, including what constitutes Marquis' "specific and identifiable trade secrets." Marquis asserts that on July 28, 2021, the Illinois court ruled that Marquis had "sufficiently identified its trade secrets with specificity." (Filing No. 51 at p. 5 n.5). The Third-Party Witnesses respond that the Illinois court's order did not find that Marquis' identified trade secrets, which have not been disclosed to the Third-Party Witnesses, are the *de facto* trade secrets of Marquis, but instead determined for purposes of party discovery that Marquis had sufficiently identified its trade secrets, although it is "unclear what trade secrets the Court was referring to." (Filing No. 57 at p. 4 n.3). The Illinois court in the underlying litigation recognized a "trade secret 'is one of the most elusive and difficult concepts in the law to define.'" *Marquis ProCap Sys., LLC v. Novozymes N. Am., Inc.*, No. 20-1020, 2021 WL 3192158, at *2 (C.D. Ill. July 28, 2021) (quoting *Learning Curve Toys, Inc. v. Playwood Toys, Inc.*, 342 F.3d 714, 723 (7th Cir. 2003). "[D]etermining whether a trade secret exists requires an ad hoc evaluation of all of the surrounding circumstances" and "whether certain information constitutes a trade secret ordinarily is best resolved by a finder of fact after full presentation of evidence from each side" *Id.* (internal quotations and citations omitted). The Illinois court recognized that at this stage of the proceedings—a discovery dispute rather than a dispositive motion—Marquis had provided enough information to move forward with discovery. *Id.*

Here, in addition to the more general categories Marquis identifies as its trade secrets in its complaint (Filing No. 23-7 at p. 12), Marquis has also provided Exhibit O (Filing No. 60) identifying its Proprietary Information and/or "trade secrets" of Marquis that were shared with

10

Novozymes. The Court finds Marquis may inquire about its information contained in Exhibit O and whether that information was disclosed by Novozymes to the Third-Party Witnesses.[6] As recognized by the Illinois court, a trade secret is "elusive and difficult to define," but Marquis has provided enough information for counsel to determine whether the questions directed at the Third-Party Witnesses relate to information Marquis believes may have been disclosed by Novozymes. Additionally, because it is apparent that the parties found the Court's prior Order ambiguous and somewhat unworkable in practice, rather than permitting deponents to answer "confidential" to deposition questions in their sole discretion, the Court will direct the deponents to respond to questions, subject to objections made by their counsel, and designate their transcripts as Highly Confidential – Attorney's Eyes Only under the Confidentiality Orders. See Filing No. 2-3 (February 7, 2020, Confidentiality Order protecting confidential and/or proprietary documents disclosed by Marquis, Novozymes, and Green Plains during discovery); Filing No. 46-1 at p. 28 (October 14, 2020, Confidentiality Order pertaining to third-party discovery directed to Fluid Quip). The Court expects questioning counsel to act in good faith in formulating questions within these parameters, and responding counsel to object in good faith within these parameters.

## II. Marquis' Motion to Compel Deposition

Marquis has filed a motion to compel Becker to appear for a second deposition to properly answer questions related to its claims against Novozymes and seeks costs and fees related to the motion. (Filing No. 61). Marquis maintains that Becker improperly refused to answer certain questions on the basis that the answers were "confidential" because (1) the deposition questions sought information designated as Novozymes IP under the JDA; and (2) Becker's testimony is adequately protected under the Confidentiality Order in the Illinois lawsuit. (Filing No. 64 at p. 16). As a compromise, Marquis has offered to depose another Green Plains employee with relevant knowledge in lieu of Becker, such as one of Green Plains' scientists. (Filing No. 61 at p. 2; Filing No. 82).

"The conduct of depositions by oral examination is governed by Federal Rule of Civil Procedure 30." *Sec. Nat. Bank of Sioux City, IA v. Day*, 800 F.3d 936, 942 (8th Cir. 2015). "A deposition is meant to be a question-and-answer conversation between the deposing lawyer and the

---

[6] Marquis has designated Exhibit O as Highly Confidential – Attorney's Eyes Only, and the parties shall comply with the relevant Confidentiality Order regarding its disclosure.

11

witness. *Lund v. Matthews*, No. 8:13CV144, 2014 WL 517569, at *4 (D. Neb. Feb. 7, 2014). "A person may instruct a deponent not to answer only when necessary to preserve a privilege, to enforce a limitation ordered by the court, or to present a motion under Rule 30(d)(3)." Fed. R. Civ. P. 30(c)(2). A party may move for an order compelling an answer if "a deponent fails to answer a question asked under Rule 30 or 31," and an evasive or incomplete answer "must be treated as a failure to disclose, answer, or respond." Fed. R. Civ. P. 37(a)(3)(B)-(4).

The Court previously found the Rule 30(b)(6) deposition notice to Green Plains properly sought testimony regarding (1) the discussions, negotiations, and/or meetings between Green Plains and Novozymes in 2019 relating to a possible partnership or collaboration on Protein Capture; (2) any communications between Novozymes and Green Plains regarding Marquis, ProCap, or this Lawsuit; and (3) all presentations, reports, or information provided to the Board of Directors and/or Senior Management of Green Plains regarding the benefits, opportunities, and/or risks related to the partnership between Novozymes and Green Plains. The Court generally limited the scope of discovery such that Marquis could "discover what, if any, of Marquis' proprietary information was provided to Green Plains by Novozymes," and limited Marquis to inquiries regarding Marquis' "specific and identifiable trade secrets that Novozymes may have provided to Green Plains[.]" The Court also found that Becker's deposition was not barred by the apex-deposition rule, and since he was involved and familiar with details of the Novozymes-Green Plains partnership, the Court permitted Marquis to "explore [his] . . . knowledge and recollection of events relevant to Marquis' claims against Novozymes." (Filing No. 35 at p. 9).

By agreement of the parties, Marquis deposed Becker as Green Plains' 30(b)(6) witness and individually on November 18, 2021, in person at Green Plains headquarters in Omaha. Marquis argues that during Becker's individual deposition, he refused to answer certain questions about Novozymes' involvement and potential use of Marquis' contractually protected Proprietary Information and trade secrets in its work with Green Plains under the JDA between Novozymes and Green Plains. (Filing No. 64 at p. 10). As discussed above, the Court does find Green Plains interpreted this Court's prior Order more restrictively than intended, and Becker did improperly respond, "Confidential," to some otherwise appropriate questions. See e.g., Filing No. 66-4 at pp. 21 ("Has Novozymes suggested any enzymes for you to use in the protein separation system?"). However, Green Plains' position was justified, as the Court recognizes its prior Order may have created ambiguity for the parties and because the Court did state, "Green Plains does not have to

answer questions about development of its competing protein capture process" outside the scope as limited by the Court. Under the circumstances, the Court will permit a subsequent deposition to take place of a Green Plains witness with relevant knowledge considering the Court's clarification contained in this order. The deposition will be limited to 4 hours. Given the Court's reasoning, Marquis' request for attorney's fees is denied. See Fed. R. Civ. P. 37(a)(5)(providing that an award of attorney's fees is not required where the opposing party's nondisclosure, response, or objection was substantially justified or if a motion to compel is granted in part and denied in part); Fed. R. Civ. P. 30(d)(2)('The court may impose an appropriate sanction--including the reasonable expenses and attorney's fees incurred by any party--on a person who impedes, delays, or frustrates the fair examination of the deponent."

Accordingly,

**IT IS ORDERED**:

1. The Motion for Protective Order and/or Modification (Filing No. 44) is granted, in part, and denied, in part, as set forth above;
2. Marquis' Motion to Compel Todd Becker to Properly Answer Deposition Questions Relevant to Marquis' Claims Against Novozymes (Filing No. 61) is granted, in part, as set forth above.
3. If no party files an objection to this Order on or before **May 26, 2022**, the Clerk of the Court shall terminate this case for statistical purposes. Failure to timely object may constitute a waiver of any objection to this Order. See NECivR 72.2.

Dated this 12th day of May, 2022.

BY THE COURT:

s/Michael D. Nelson
United States Magistrate Judge